# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| MICHELLE PIETRZAK, | : | |
| Plaintiff, | : | Case No. 3:06CV246 |
| vs. | : | District Judge Walter Herbert Rice<br>Magistrate Judge Sharon L. Ovington |
| JO ANNE B. BARNHART,[1]<br>Commissioner of the Social<br>Security Administration, | :<br><br>: | |
| Defendant. | : | |

# REPORT AND RECOMMENDATIONS[2]

## I.  INTRODUCTION

The Equal Access to Justice Act ("EAJA") requires the Government to pay a prevailing Social Security plaintiff's attorney fees "unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." 28 U.S.C. §2412(d)(1)(A).  The parties in the instant case dispute whether the Government must pay Plaintiff's attorney fees under the EAJA.  (Doc. #s 16, 17, 18).

The parties' EAJA dispute arose after the Court's earlier Decision and Entry

---

[1] The proper-party defendant is Michael J. Astrue, the present Commissioner of the Social Security Administration.  For docketing continuity, the caption of this case will remain the same.

[2] Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendations.

reversing/vacating an Administrative Law Judge's ("ALJ's") non-disability decision and remanding the case to the Social Security Administration for proceedings under Sentence Four of 42 U.S.C. §405(g). (Doc. #14).

## II. DISCUSSION

### A. Attorney Fees under the EAJA

**1.**

The Commissioner contends that Plaintiff is not entitled to EAJA fees because his position in support of the ALJ's Decision was substantially justified.

"[S]ubstantially (*i.e.*, for the most part) justified...," under the EAJA, denotes a position that is "'justified in substance or in the main' – that is, justified to a degree that could satisfy a reasonable person." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988); *Howard v. Barnhart*, 376 F.3d 551, 554 (6th Cir. 2004). A reasonable person could find the Commissioner's position substantially justified if it rested on "a reasonable basis in law and fact." *Pierce*, 487 U.S. at 566 n.2; *see Howard*, 376 F.3d at 554. Even if it ultimately lacked merit, if the Government's position rested on a reasonable basis in law and fact, it meets the substantial justification standard. *See Pierce*, 487 U.S. at 566 n.2; *see also Howard*, 376 F.3d at 554.

The EAJA places the burden on the Government to demonstrate that its position was substantially justified. *See Healey v. Leavitt*, 485 F.3d 63, 67 (2nd Cir. 2007); *see also Hackett v. Barnhart*, 475 F.3d 1166, 1169 (10th Cir. 2007)(courts have "uniformly

recognized" that this burden "must be shouldered by the Government.").[3]

It must be initially noted that the Court's prior Order remanding the case for further administration proceedings does not mandate the conclusion that the Commissioner's position was not substantially justified. *See Pierce*, 487 U.S. at 565-66 and n.2. Instead, as set forth above, the Court examines the Commissioner's present explanation of his litigation position to determine if it rested on "a reasonable basis in law and fact." *Pierce*, 487 U.S. at 566 n.2; *see Howard*, 376 F.3d at 554.

Upon a review of the ALJ's decision, it is readily apparent that it does not cite to any applicable case law or Regulation or Social Security Ruling setting forth the legal standards applicable to the weighing of medical source opinions. (Doc. #10 at 11). Although this alone did not constitute an error of law, given the mandatory and often dispositive nature of the legal standards applicable to weighing medical source opinions, the complete absence of a plain statement of these standards in the ALJ's decision would have alerted a reasonable person in the Commissioner's situation of the need for the ALJ to assiduously avoid (1) substituting his own lay medical opinion in place of the medical source opinions, and (2) applying a limited number of factors to support his rejection of the medical source opinions favorable to Plaintiff. The ALJ's decision, however, committed both errors thus leaving his decision, and the Commissioner's attempt to support it, with no basis in law and fact.

---

[3] *Conrad v. Barnhart*, 434 F.3d 987, 990 (7th Cir. 2006); *Goad v. Barnhart*, 398 F.3d 1021, 1025 (8th Cir. 2005); *Gutierrez v. Barnhart*, 274 F.3d 1255, 1258 (9th Cir. 2001); *Lively v. Bowen*, 858 F.2d 177, 180 (4th Cir. 1988).

The Commissioner contends otherwise in part by correctly pointing out that the Regulations required the ALJ to provide "good reasons" for not adopting a treating source opinions. *See* 20 C.F.R. §404.1527(d)(2). The Commissioner thus explains that his decision to support the ALJ's decision was reasonable due to the "good reasons" provided by the ALJ for not crediting Dr. Smith's opinion. This explanation does not establish a substantially reasonable basis for the Commissioner's support of the ALJ's decision, because it points to a red herring (*i.e.*, the ALJ's compliance with the "good reasons" requirement) rather than directly addressing the absence of support in the law for the ALJ's substitution of his own lay medical opinion combined with his failure to evaluate the medical source opinions as otherwise required by 20 C.F.R. §404.1527(d). *See* Doc. #10 at 11-13. For example, there was also no reasonable basis in law and fact to support the ALJ's substitution of his own lay medical opinion in place of Dr. Smith's opinion. *See id*. And, there was no legal or factual basis to support the ALJ's evaluation of Dr. Smith's opinion when the ALJ ignored or overlooked the existence of a medical basis for Dr. Smith's opinion, especially his belief that Plaintiff accurately reported her pain levels in light of the causal connection Dr. Smith identified between Plaintiff's chemotherapy and neuropathy and pain. *Id*. at 12. As previously explained in this case, "The ALJ did not recognize this or rely on other medical evidence – such as another medical source opinion – to conclude that the chemotherapy treatment [Plaintiff] underwent could not cause her neuropathy or lead to the pain levels she experiences." (Doc. #10 at 13).

The Commissioner's reliance on other evidence in the record, *see* Doc. #17 at 6-9,

4

likewise fails to reveal a reasonable basis in law and fact for the Commissioner's support of the ALJ's decision. This is particularly so as to the ALJ's review of Plaintiff's daily activities, which accepted snippets of Plaintiff's testimony out of context, while omitting or minimizing the more explanatory, hence less conclusory, aspects of Plaintiff's testimony. As the prior Report in this case previously observed, contrary to the ALJ's finding, Plaintiff's testimony indicates that she cooks "only using the microwave oven," she can sweep "when her pain is less severe," she is "sometimes" able to wash clothes, she is able to grocery shop "when the pain is less severe," she attends church "one Sunday each month," and "on good days" she is able to shower. (Doc. #10 at 14-16). In addition, Plaintiff testified about her limitations in sitting, as well as standing, but the ALJ did not address these limitations when assessing Plaintiff's residual functional capacity. For these reasons, the Commissioner's decision to support the ALJ's limited view of Plaintiff's testimony, and the ALJ's resulting RFC assessment, did not have a reasonable basis in fact or law.

      Accordingly, the Commissioner's position in opposition to Plaintiff's Statement of Errors was not substantially justified.

### B.     Amount of Attorney Fees

Plaintiff seeks an award of attorney fees based on the following calculation: 24.50 (hours of attorney work)  x  $152.76 (per hour) = $3,742.62.

The EAJA limits an award of attorney fees to the prevailing market rates, which "shall not be awarded in excess of $125 per hour unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee..." 28 U.S.C. §2412(d)(2)(A).

The Commissioner contends that Plaintiff has not met her burden to establish a reasonable market rate for attorney fees, let alone one above the $125 per hour statutory limit.

Cost of living increases in the EAJA's $125 per hour statutory limit are not automatic. "While adjustments for increases in the Consumer Price Index are sometimes seen as essentially perfunctory or even mandatory..., the matter [is left] to the sound discretion of the district court." *Begley v. Secretary of Health and Human Services*, 966 F.2d 196, 199 (6th Cir. 1992) (citations omitted).

At least several factors warrant an increase in the EAJA's $125 per hour rate in this case. Relatively few attorneys in the Dayton metropolitan area are available to represent plaintiffs in social security cases, which often involve complex legal and medical issues. Because of this complexity as well as the deleterious medical conditions typically involved, representation by counsel is often essential to provide a clear, cogent, and concise presentation of the plaintiff's case. There are also a very large number of social security cases filed in this Court. Experienced social security attorneys are thus an essential component of the efficient and just resolution and management of these cases.

For these reasons, an increase in the statutory rate is warranted to encourage experienced attorneys to represent plaintiffs in social security cases filed in this Court.

The parties present different methods of calculating the proper increase in the EAJA's hourly rate. Plaintiff proposes an hourly rate of $152.76. She calculates this using the Consumer Price Index (CPI) of 155.7, which was the CPI in March 2006 when Congress increased the EAJA's hourly-rate ceiling to $125.

Based on information from the United States Department of Labor, Plaintiff has sufficiently documented that the CPI increased from 2005 to 2006 by 22.21%.[4] Increasing the $125 statutory cap by 22.21% results in the hourly rate of $152.76.[5] And, when this rate is multiplied by 24.50 hours, the result is a proposed total award of attorney fees equaling $3,742.62.

In contrast, the Commissioner proposes an averaging method to calculate the cost-of-living increase in the statutory rate. The average is found by taking the CPI for each year (2005 and 2006) and dividing it by 155.7, which was the March 2006 CPI (when Congress increased the statutory rate to $125 per hour). The result for each year is then multiplied by $125 to determine the increased hourly rate. The Commissioner's approach

---

[4] The difference in the CPI from 2005 to 2006 was 33 (181.6 - 148.6 = 33). The percent of this increase (x = percent of increase) is calculated as follows:

$$33/148.6 = x/100$$
$$3300/148.6x$$
$$x = 22.21\%$$

[5] The amount of this increase is $27.76 (22.21% x $125). Adding this ($27.76) to the hourly rate $125 results in the hourly rate of $152.76.

yields the following:

| YEAR | adjusted CPI All Index Average | x | statutory rate | = adjusted hourly rate |
|---|---|---|---|---|
| 2005 | 181.6 ÷ 155.7 = 1.17 | x | $125 | = $145.79 |
| 2006 | 187.7 ÷ 155.7 = 1.20 | x | $125 | = $150.69 |

  Multiplying these respective rates by the hours plaintiff's attorney worked in 2005 and 2006, the Commissioner proposes a total amount of EAJA fees equaling $3,607.14.

  Although some courts have used this averaging method, *see Jones v. Commissioner*, 2007 WL 1362776 at *6 (S.D. Ohio May 8, 2007)(Hogan, M.J.; Barrett, D.J.); *see also United States v. Adkinson*, 256 F.Supp.2d 1297, 1313 (N.D.Fla. 2003), the averaging method risks an impermissible charge of pre-judgment interest to the Government. *See East v. Barnhart*, 377 F.Supp.2d 1170, 1176 (M.D. Ala. 2005). As the thorough and well-reasoned decision in *East* explains:

> Basing inflationary adjustments on the CPI at the time counsel agreed to represent the prevailing party in a particular case guarantees that the United States will not be charged interest. In addition, it most closely replicates ordinary hourly fee agreements, and because the EAJA does not supersede attorney-client contracts establishing mutually agreed-upon methods for calculating the reasonable charge for an attorney's services, this method will cause little if any hardship and will actually reduce the unwelcome surprise that may accompany a period of significant deflation. The time-honored judicious values of accuracy, consistency and predictability will be well-served.

*East*, 377 F.Supp.2d at 1176-77 (footnotes omitted). For these reasons, Plaintiff's proposed percentage method is accepted in this case. And when applied in this case, the percentage method increases to $125 statutory hourly rate to the hourly rate of $152.76.

8

Plaintiff's counsel has sufficiently documented that he performed 24.50 hours of professional services in this case. *See* Doc. #10 at 3 (and attached Exhibits).

Accordingly, the total amount of attorney fees due Plaintiff is $3,742.62 ($152.76 x 24.50 hours = $3,742.62).

### IT IS THEREFORE RECOMMENDED THAT:

1. Plaintiff's Motion For Attorney Fees Under EAJA, 28 U.S.C. §2412(d) (Doc. #16) be GRANTED;

2. Plaintiff be granted an award of attorney fees under the EAJA in the total amount of $3,742.62; and

3. The case remain terminated on the docket of this Court.

December 6, 2007

              s/ Sharon L. Ovington
                Sharon L. Ovington
              United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within ten days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(e), this period is extended to thirteen days (excluding intervening Saturdays, Sundays, and legal holidays) because this Report is being served by mail. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within ten days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F. 2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985).